## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID PURCELL, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCIENT FEDERAL CREDIT UNION | ) | |
| SPLIT DOLLAR AGREEMENT PLAN | ) | |
| and SCIENT FEDERAL CREDIT | ) | 3:22-CV-961 (SVN) |
| UNION, *as Administrator*, | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |
| SCIENT FEDERAL CREDIT UNION, | ) | |
| *Counter Claimant*, | ) | May 4, 2023 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID PURCELL, | ) | |
| *Counter Defendant*. | ) | |

## RULING AND ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND DEFENDANTS' MOTION TO EXPAND DISCOVERY

Sarala V. Nagala, United States District Judge.

Plaintiff/Counter Defendant David Purcell brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Defendant Scient Federal Credit Union Split Dollar Agreement Plan (the "Plan") and Defendant/Counter Claimant Scient Federal Credit Union ("SFCU," and collectively with the Plan, "Defendants"), as administrator of the Plan, improperly denied him benefits he was entitled to receive after his employment was terminated due to a disability.  In response to Purcell's complaint, SFCU has filed two counterclaims against him, alleging that he violated the implied covenant of good faith and fair dealing and breached fiduciary duties he owed to SFCU by failing to disclose the extent of his disability when he served as SFCU's Chief Executive Officer.  Presently pending before the

Court are Purcell's motion to dismiss SFCU's counterclaims (ECF No. 24) and Defendants' motion to expand discovery beyond the underlying administrative record (ECF No. 23). For the reasons below, Purcell's motion to dismiss is GRANTED, and Defendants' motion to expand discovery is DENIED.

## I.       RELEVANT FACTUAL BACKGROUND & PROCEDURAL HISTORY

Unless otherwise noted, the following facts are undisputed or admitted, based on the parties' filings to date. Purcell served as the Chief Executive Officer (CEO) of SFCU from June of 2015, until March 16, 2020. Ans., ECF No. 20, ¶ 6; Countercls., ECF No. 20, ¶ 2. About two years after he became CEO, Purcell entered into an employment agreement with SFCU, Ans. ¶ 7; Countercls. ¶ 5; the agreement required SFCU to offer Purcell "a retirement plan consistent with its offer of employment as its CEO and industry practices," Ans. ¶ 7. Purcell and SFCU later entered into the Plan, which became effective on February 1, 2018. *Id.* ¶ 8. The Plan is named as a defendant in this action.

The Plan is a form of deferred compensation known as a "split dollar" policy. *Id.* ¶ 9. Under such a policy, an employer generally purchases life insurance on the life of an employee. *Id.* The employee is permitted to borrow a portion of the cash value of the life insurance policy under certain conditions, and the employer is repaid for the policy's premium payments, with interest, out of the cash value of the policy or through the death benefit paid on the policy. *Id.* Here, Purcell is the sole participant in the Plan, while SFCU's Board of Directors is designated as the Plan's administrator and fiduciary. *Id.* ¶¶ 1, 3–4.

The amount Purcell is entitled to borrow under the Plan is known as the "Annual Borrowing Cap." *Id.* ¶ 10. The Plan provides that Purcell may access the Annual Borrowing Cap upon reaching retirement age on May 15, 2025, but that, in the event Purcell is terminated due to a

disability, he may borrow as of the date of his termination. *Id.* ¶ 11. The Plan defines "disability," in part, as "the Social Security Administration determining that Purcell is totally disabled." *Id.* ¶ 30. The Plan further provides that Purcell becomes fully vested in the Annual Borrowing Cap by remaining employed by SFCU until the "Access Date," defined as the earliest of May 15, 2025, the termination of his employment due to death or disability, or any termination of employment within twenty-four months of a "change of control," as defined in the Plan. *Id.* ¶ 12.

In addition, the Plan contains a vesting schedule providing that Purcell becomes partially vested in the Annual Borrowing Cap if his employment is involuntarily terminated for reasons other than death, disability, or change of control. *Id.* ¶ 13. Specifically, the Plan provides that Purcell is 0% vested if terminated before February 1, 2019; 33% vested if terminated after February 1, 2019, and before February 1, 2022; 67% vested if terminated after February 1, 2022, and before February 1, 2025; and 100% vested if terminated after February 1, 2025. *Id.*

Purcell alleges that, throughout his employment at SFCU, his performance was described as superior, that he was responsible for vastly improving the profitability and viability of SFCU's business, that SFCU never informed him that he had any performance issues, and that SFCU consistently gave positive reviews of his performance as CEO. Compl., ECF No. 1, ¶¶ 17–18. Purcell further alleges that, around the spring of 2016, he started experiencing increased stiffness and slowness of movement and that, in October of 2017, he was diagnosed with Parkinson's Disease. *Id.* ¶¶ 19–20. According to Purcell, his symptoms became increasingly evident through the date of his termination in March of 2020, and the SFCU Board of Directors had many opportunities to observe these symptoms. *Id.* ¶ 21. The parties agree that Purcell requested a reasonable accommodation of a standing workstation to address his symptoms, Ans. ¶ 22, and that

he disclosed that he had Parkinson's Disease on an application, executed in September of 2017, for the insurance policy funded by the Plan, *id.* ¶ 23.

On March 16, 2020, SFCU informed Purcell that it was terminating him, stating "we are going in a different direction . . . it was a tough decision." *Id.* ¶ 26. When Purcell inquired about his benefits under the Plan, SFCU informed him that he was vested in one third of the Annual Borrowing Cap. *Id.* ¶ 27. The Social Security Administration later determined that Purcell was disabled as of the date of his termination. *Id.* ¶ 29. Purcell alleges that the reason SFCU provided for his termination was a pretext, and that he was actually terminated due to his disability, of which SFCU's Board of Directors had knowledge. Compl. ¶ 28.

Purcell subsequently filed a notice of claim with the Plan, asserting that he was 100% vested in the Annual Borrowing Cap because his employment had been terminated due to his disability. Ans. ¶ 32. The notice of claim asserted that SFCU had breached its fiduciary duties to Purcell by denying him benefits under the Plan and by failing to implement a loan interest rate deduction that had been approved by the SFCU Board of Directors Compensation Committee and which purportedly would have protected Purcell's benefits under the Plan. *Id.* ¶¶ 24, 33. The parties reference various communications they exchanged after Purcell filed the notice of claim, *see id.* ¶¶ 38, 41, 42; Compl. ¶¶ 38, 41, 42; to the extent these communications are relevant to this ruling, they are discussed in further detail below. Ultimately, Defendants refused to provide Purcell with the benefits he claimed he was owed under the Plan, though Purcell claims Defendants failed to send him an official denial letter under the relevant regulations. Compl. ¶ 46.

Purcell initiated this action in July of 2022, alleging that Defendants violated sections 502(a)(1)(B) and 502(a)(3) of ERISA. In October of 2022, Defendants answered Purcell's complaint; Defendants' answer includes two counterclaims asserted on behalf of SFCU. Count

One of the counterclaims alleges that Purcell breached the implied covenant of good faith and fair dealing in relation to his employment agreement with SFCU by failing to disclose that he was unable to perform his job prior to his termination.   Countercls. ¶¶ 16–23.   Count Two of the counterclaims alleges that Purcell's failure to disclose this information likewise breached the fiduciary duties he owed to SFCU as CEO of the organization.   *Id.* ¶¶ 24–34.   In November of 2022, Defendants filed their present motion to expand discovery beyond the administrative record. Shortly thereafter, Purcell moved to dismiss SFCU's counterclaims.

## II.   PURCELL'S MOTION TO DISMISS COUNTERCLAIMS

Purcell advances two separate grounds for dismissal of SFCU's counterclaims.   First, Purcell argues that dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) because he has sued SFCU only in its capacity as the administrator of the Plan and, therefore, SFCU lacks standing to assert counterclaims in its capacity as Purcell's former employer.[1]   Second, Purcell argues that dismissal is proper under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks supplemental jurisdiction over SFCU's counterclaims.   The Court finds that allowing SFCU to assert counterclaims in its capacity as Purcell's former employer, when it was only sued in its capacity as administrator of the Plan, would violate Federal Rule of Civil Procedure 13. Accordingly, the Court dismisses the counterclaims on this basis and does not reach Purcell's arguments regarding supplemental jurisdiction.[2]

---

[1] Although Purcell asserts that both SFCU *and* the Plan lack standing to assert the counterclaims, the counterclaims are asserted on behalf of SFCU only and, therefore, the Court will not address Purcell's arguments regarding the Plan on this issue.   *See* Countercls. at 9 ("Defendant (Counterclaim Plaintiff), Scient Federal Credit Union, brings forth the following counterclaims . . . .").

[2] Because the Court is declining to proceed to the merits of SFCU's counterclaims, it need not address Purcell's challenge to the Court's subject matter jurisdiction before dismissing the counterclaims on Rule 13 grounds.   *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (discussing how "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits'").

A. <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  Federal Rule of Civil Procedure 13, which addresses the filing of counterclaims, provides that a party may assert counterclaims only against "an opposing party."  In general, under the "opposing party" rule, "when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against him in another capacity." *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 885 (2d Cir. 1981); *see DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) (summary order) (same); *Gillis v. Wilhelm*, No. 09 CV 1116 (GBD), 2010 WL 1375167, at *4 (S.D.N.Y. Mar. 29, 2010) ("The 'opposing party' requirement will generally preclude a defendant from asserting a counterclaim against a plaintiff in a capacity other than the capacity in which he or she brought suit.").  Likewise, in general, a defendant "may counterclaim only in the capacity in which he has been sued." *Banco Nacional de Cuba*, 658 F.2d at 886; *see Favors v. Cuomo*, No. 11-CV-5632 (RR) (GEL) (DLI) (RLM), 2013 WL 5818773, at *5 (E.D.N.Y. Oct. 29, 2013) (discussing "the general rule that a defendant may only counterclaim in the capacity in which he is sued").

The Second Circuit has cautioned, however, that "it will not always be wise to apply the 'opposing party' rule mechanically." *Banco Nacional de Cuba*, 658 F.2d at 886.  Courts in this Circuit have developed two exceptions to the general rule that a defendant may only counterclaim in the capacity in which it is sued. *Favors*, 2013 WL 5818773, at *5.  Specifically, a party may be allowed to assert a counterclaim in a different capacity if "the counterclaim would benefit both capacities of the defendant asserting the claim," or if "principles of equity and judicial economy support such a counterclaim." *Id.* (citing *Blanchard v. Katz*, 117 F.R.D. 527, 529 (S.D.N.Y. 1987)).

B. <u>Discussion</u>

Although Purcell frames his argument regarding the capacity in which SFCU is asserting its counterclaims as an issue of "standing," the Court finds that the counterclaims must be dismissed at the threshold under Rule 13. Purcell has sued SFCU only in its capacity as the administrator of the Plan. By contrast, SFCU's counterclaims pertain not to its capacity as the Plan's *administrator*, but rather to its individual, nonrepresentative capacity as Purcell's former employer. Accordingly, SFCU's counterclaims violate the opposing party requirement of Rule 13, and the Court dismisses them on this basis.

At the outset, Purcell's complaint makes abundantly clear that he is suing SFCU in its capacity as Plan administrator. First, both the caption of the complaint and the complaint's opening paragraph state that SFCU is sued "as Administrator" of the Plan. Compl. at 1. The complaint also generally distinguishes between references to SFCU as "the Administrator" and SFCU as Purcell's former employer. *Compare id.* (stating that the complaint refers to SFCU, "in its role as Administrator of the Plan," as the "Administrator"), *with id.* ¶ 1 (describing Purcell as "the sole participant in the Plan sponsored by his former employer, Scient Federal Credit Union ('SFCU')"), *and id.* ¶ 54 ("The *Administrator* violated its fiduciary duty to Purcell by denying him benefits he was due under the Plan to financially benefit *SFCU*." (emphasis added)). In addition, the complaint contains specific allegations regarding SFCU's capacity as the administrator and "fiduciary" of the Plan. *See id.* ¶ 4 ("The Administrator is designated as the fiduciary of the Plan by the document establishing the Plan."). Thus, based on the allegations in his complaint, Purcell is suing SFCU only in its capacity as administrator of the Plan.

By contrast, the counterclaims assert that Purcell injured SFCU in its individual capacity as Purcell's former employer. For example, the counterclaims allege that "[i]n his role as [CEO],

Purcell was an executive within the organization and had a fiduciary duty to the organization, the Board of Directors, SFCU's employees, lenders and borrowers." Countercls. ¶ 4. The counterclaims appear to distinguish between SFCU as the Plan's administrator and SFCU as the organization that employed Purcell. *See id.* ¶ 6 (alleging that Purcell disclosed that he had Parkinson's Disease on an application for an insurance policy, "a copy of which was provided to the *Administrator* of the plan *for SFCU*" (emphasis added)); *see also id.* ¶ 7 (alleging that Purcell "was notified by SFCU that his employment with the organization would be terminated").

Importantly, both counts of the counterclaims, by nature, pertain specifically to Purcell's employment relationship with SFCU, rather than his relationship with SFCU as a participant in the Plan. Count One alleges that Purcell breached the implied covenant of good faith and fair dealing by failing to "exercise good faith when performing his duties under his *employment contract* and while *acting as [CEO]* for SFCU." *Id.* ¶¶ 20–23 (emphasis added). Count One does not allege that Purcell failed to exercise good faith in performing his duties under any contract he entered into with SFCU in its capacity as administrator of the Plan. Similarly, as discussed above, Count Two refers to Purcell's alleged breaches of fiduciary duties he owed to "SFCU, its Board of Directors, as well as its employees, lenders and borrowers" as "*an executive within the organization.*" *Id.* ¶ 25 (emphasis added). There is no allegation that Purcell breached any fiduciary duties he owed to SFCU in its capacity as the Plan's administrator; rather, these allegations pertain to alleged breaches of fiduciary duties Purcell owed to SFCU when he served as an employee of the organization.

Thus, comparing Purcell's complaint and SFCU's counterclaims makes clear that SFCU has been sued in one capacity and seeks to countersue in a different capacity. In other words, because Purcell's claims implicate SFCU's role as Plan administrator, Purcell and SFCU—in its

capacity as Purcell's former employer—are not "opposing parties" in this action.  *See Banco Nacional de Cuba*, 658 F.2d at 886 (concluding that, because the plaintiff had not sued Chase Manhattan Bank in its capacity as trustee, Chase's counterclaims in its capacity as trustee did not meet Rule 13's opposing party requirement).   Accordingly, pursuant to Rule 13, SFCU's counterclaims may not proceed in this action, unless an exception to the opposing party rule applies.  As set forth below, the Court finds that neither of the two exceptions to the opposing party rule applies in this case.

Regarding the first exception, there is no indication that any recovery based on the counterclaims would benefit SFCU both in its individual, nonfiduciary capacity and in its capacity as a fiduciary of the Plan.  Instead, SFCU asserts its counterclaims only to seek remedies for injuries it allegedly suffered as Purcell's former employer.  Thus, the first exception is inapplicable here.

Regarding the second exception, the Court finds that equity and judicial economy do not mandate that the counterclaims be tried in this action.  Although the complaint and counterclaims generally discuss similar subject matter—how Purcell's symptoms from Parkinson's Disease impacted his employment with SFCU—the parties' respective claims are otherwise distinct.  On the one hand, Purcell's complaint pertains to the provisions of the Plan and SFCU's duties as a fiduciary of the Plan, and whether Purcell's termination qualified as an event that triggered the full vesting of his benefits under the Plan.  On the other hand, SFCU's counterclaims focus on the employment agreement between SFCU and Purcell and the duties Purcell owed to SFCU and other stakeholders as an executive of SFCU, and whether Purcell improperly failed to disclose the extent of his Parkinson's Disease symptoms.  Thus, while there are similarities between the topics

discussed in Purcell's complaint and SFCU's counterclaims, a closer examination reveals that the specific issues to be examined as to the parties' respective claims are predominantly distinct.

Moreover, Purcell initiated this action under ERISA, which means that the parties have no right to a jury trial, *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003), and that, as discussed below, evidence is limited to the underlying administrative record unless good cause is shown to admit other evidence. By contrast, SFCU's claims would typically be brought in a non-ERISA suit, could be tried before a jury, *see Pride Acquisitions, LLC v. Osagie*, No. 3:12-CV-639 JCH, 2014 WL 4843688, at *13 (D. Conn. Sept. 29, 2014) (noting that intent, with respect to a bad faith claim, "is generally an issue for the jury to decide"), and would involve discovery distinct from topics that would typically be expected to be addressed in an administrative appeals process regarding a denial of benefits. Thus, SFCU's counterclaims would significantly expand the scope of this action, and equity and judicial economy would not be greatly served by allowing SFCU's counterclaims to proceed here.

For these reasons, the Court finds that neither exception to Rule 13's opposing party requirement applies. In reaching this conclusion, the Court finds the reasoning in *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202 (M.D.N.C. 1996), persuasive. In that case, the plaintiff served as both the employer of one of the defendants and the fiduciary of a health plan in which that defendant was a participant. *Id.* at 1206–07. After the plaintiff filed suit "in its fiduciary capacity" seeking, among other things, reimbursement under the plan, *id.* at 1207, 1209, the defendant attempted to assert a counterclaim against the plaintiff "in its individual capacity as a corporation and employer," *id.* at 1207–08. Citing Second Circuit precedent, the court granted judgment on the pleadings for the plaintiff, *id.* at 1209, reasoning that "[b]ecause [the plaintiff] is suing in a fiduciary capacity, Rule 13 dictates that it can be countersued only in that capacity," *id.* at 1207.

The court further reasoned that neither of the exceptions to the opposing party rule applied.  With respect to the first exception, the court found that "any recovery obtained by [the plaintiff] will benefit only the [health plan] and will not benefit [the plaintiff] in its individual capacity as a corporation and employer."  *Id.* at 1207–08.  As for the second exception, the court reasoned that "any recovery that [the defendant] might ultimately obtain on his counterclaim . . . would have to be paid from the coffers of [the plaintiff as] the employer and could not be paid, under the dictates of ERISA, by or from the accounts belonging to [the plaintiff] as fiduciary for the [health plan]";  thus, the court found that "equity and judicial economy do not dictate that the counterclaim against [the plaintiff] in its individual capacity should be allowed."  *Id.* at 1208.  Here, as in *Rhodes*, the counterclaims pertain to SFCU as an individual corporation, while the complaint asserts claims against SFCU as a Plan fiduciary.  In addition, any recovery on the counterclaims would inure to SFCU's benefit as an individual corporation, not Plan administrator, and any funds awarded would likely be paid to accounts SFCU holds as an individual corporation, not to separate accounts it presumably holds as the Plan's fiduciary.[3]

SFCU's argument that the Plan's administrator and SFCU's Board of Directors are "one in the same," ECF No. 28 at 3, is unpersuasive.  The fact that SFCU chose to designate itself as the Plan's fiduciary does not permit it to assert counterclaims in any capacity in an ERISA suit such as this, where it has been sued only in its capacity as the Plan's fiduciary.  Indeed, in other contexts, courts in this Circuit have highlighted the distinction between an organization's role as a plan administrator under ERISA and its role as an employer.  *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. LaSala*, No. 12-CV-2314 JG RLM, 2015 WL 5022585, at *5 (E.D.N.Y. Aug. 24, 2015)

---

[3] The Court acknowledges that, in *Rhodes*, the capacities of the plaintiff/counterclaim defendant—rather than the capacities of the defendant/counterclaim plaintiff—were at issue.  But, given that courts in this Circuit have applied the opposing party rule regardless of which party's capacity is at issue, *see Banco Nacional de Cuba*, 658 F.2d at 886; *Favors*, 2013 WL 5818773, at *5, this distinction does not defeat *Rhodes*' persuasive value as to this action.

("ERISA permits employers to wear two hats, and . . . they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." (alteration in original)); *Phipps Houses Servs., Inc. v. N.Y. Presbyterian Hosp.*, No. 12 CIV. 3551 JPO, 2013 WL 1775388, at *2 (S.D.N.Y. Apr. 25, 2013) ("Because Plaintiff seeks to vindicate a right independent of the pension plan, Plaintiff did not bring this claim in its fiduciary capacity.").  Accordingly, SFCU's argument that there is no distinction between its capacities as employer and plan administrator fails.  *Accord McMenimen v. Pietropaolo*, No. CIV.A. 05-12229-GAO, 2006 WL 1240483, at *1 (D. Mass. May 4, 2006) ("[W]here a trustee has sued in his fiduciary capacity, it is not permissible to assert a counterclaim against him in his individual capacity."); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986) ("Acts performed by the same person in two different capacities 'are generally treated as the transactions of two different legal personages.'").

Nor is the Court convinced by SFCU's argument that its counterclaims allege that Purcell owed fiduciary duties to SFCU, "as Administrator," and that Purcell "breached those duties owed to [SFCU] as Administrator."   ECF No. 28 at 10.   To the contrary, the paragraphs of the counterclaims SFCU cites for this argument contain no reference to SFCU *as administrator* of the Plan.  Countercls. ¶¶ 25–32.  Rather, they refer to the fiduciary duty Purcell allegedly owed "to SFCU, its Board of Directors, as well as its employees, lenders and borrowers" in his role as "an executive within the organization," *id.* ¶ 25, and how SFCU has allegedly been injured because, for example, it has needed to "address Purcell's allegations and claims," *id.* ¶ 31.  SFCU does not allege that, by failing to disclose limitations on his ability to perform in his role as an executive, Purcell breached fiduciary duties he owed to SFCU *as the Plan's administrator*.

Thus, because Purcell and SFCU, in its capacity as Plan administrator, are not opposing parties in this action, and because SFCU's other arguments are unavailing, SFCU's counterclaims cannot proceed.  *See GIA-GMI, LLC v. Michener*, No. C 06-7949 SBA, 2007 WL 1655614, at *2 (N.D. Cal. June 7, 2007) (granting motion to dismiss pursuant to Rule 12(b)(6) because counterclaim defendant was not "opposing party" under Rule 13).  Purcell's motion to dismiss SFCU's counterclaims is GRANTED, and the counterclaims are DISMISSED.

### III.    DEFENDANTS' MOTION TO EXPAND DISCOVERY

The Court next addresses Defendants' motion to expand discovery beyond the underlying administrative record.  For the reasons below, Defendants' motion is DENIED.

### A.  Legal Standard

ERISA "provides 'a panoply of remedial devices' for participants and beneficiaries of benefit plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (citation omitted). A district court reviews a denial of benefits under ERISA *de novo* unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the court examines whether the administrator's decision was arbitrary and capricious.  *Id.* at 115; *Muller*, 341 F.3d at 123–24; *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995).  Under either standard, a district court's review of a benefit plan administrator's denial of a claim for benefits is generally limited to the administrative record, that is, "the evidence before the entity that decided the claim when that decision was rendered." *Pruter v. Loc. 210's Pension Tr. Fund*, 858 F.3d 753, 762 (2d Cir. 2017) (citation and internal quotation marks omitted).  The "decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause." *DeFelice v. Am. Int'l Life Assur. Co. of N.Y.*, 112 F.3d 61, 66 (2d Cir. 1997).  *See*

*also Muller*, 341 F.3d at 125 ("The decision whether to consider evidence from outside the administrative record is within the discretion of the district court. Nonetheless, the presumption is that judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." (internal citation and quotation marks omitted) (quoting *DeFelice*, 112 F.3d at 66–67)). The proponent bears the burden "to allege facts, with sufficient specificity, that would support the existence of 'good cause' permitting the admission of additional evidence beyond the administrative record." *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 98 n.2 (2d Cir. 2003).

Limiting a court's review to the administrative record "is consistent with the fact that nothing 'in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators.'" *Miller*, 72 F.3d at 1071 (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)). To that end, courts in this Circuit "have declined to consider extra-record evidence that merely challenges the merits of the fiduciary's decision to deny benefits, but [have] admitted extra-record evidence when they have concerns about the fairness and adequacy of the procedures used to develop the record." *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 234–35 (D. Conn. 2018) (collecting cases).

For example, courts are more likely to find good cause where the evidence outside the record indicates some procedural unfairness in the administrative proceeding or incompleteness in the administrative record. *E.g.*, *DeFelice*, 112 F.3d at 66 (finding good cause to supplement administrative record where conflicted administrator adversely affected fairness of administrative proceeding); *Halo v. Yale Health Plan*, 819 F.3d 42, 60 (2d Cir. 2016) (finding good cause when the plan failed to comply with applicable federal regulation); *see also Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 647 (2d Cir. 2002) (considering purported incompleteness of administrative record).

On the other hand, courts are unlikely to find good cause to supplement an administrative record when the evidence at issue concerns the plan administrator's substantive decision, rather than a claimed procedural unfairness, or when the evidence was available to the proponent during the administrative proceeding. *Zervos*, 277 F.3d at 647; *Richard v. Fleet Fin. Grp. Inc.*, 367 F. App'x 230, 233 (2d Cir. 2010) (summary order) (concluding that evidence outside the record was not admissible for the purpose of "challeng[ing] [the plan administrator's] substantive determination"); *Muller*, 341 F.3d at 125.

"[I]f a court has the discretion to admit materials outside the administrative record upon a showing of good cause, then the court must also have the discretion to permit discovery of such materials." *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-CV-00408(AWT), 2017 WL 772328, at *2 (D. Conn. Feb. 28, 2017). Courts in this Circuit differ, however, on the question of whether a party must make a "full good cause showing" when seeking to conduct such discovery, or if such a showing is not required until the party seeks to have materials admitted as evidence for the court's consideration. *See Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229–30 (E.D.N.Y. 2008) (collecting cases). Indeed, several district courts have recognized a distinction between "the decision as to whether to allow discovery" and "the decision as to whether to allow consideration of additional evidence." *Pretty v. Prudential Ins. Co. of Am.*, 696 F. Supp. 2d 170, 182 (D. Conn. 2010). In light of this distinction, certain courts have only required a party seeking additional discovery to "show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Burgio*, 253 F.R.D. at 230; *Pretty*, 696 F. Supp. 2d at 182.

B. <u>Discussion</u>

Defendants assert that they should be permitted to conduct discovery beyond the administrative record for two reasons. First, Defendants claim that the administrative record does

not include sufficient information regarding SFCU's counterclaims.  To the extent Defendants move for discovery on this basis, their motion is denied as moot given that the Court has dismissed SFCU's counterclaims.  Second, Defendants assert that Purcell has raised allegations in his complaint regarding his job performance and the symptoms of Parkinson's Disease he was experiencing that are not addressed in the administrative record.  For the reasons below, Defendants' motion is likewise denied to the extent they seek discovery regarding these matters.

At the outset, this case presents the uncommon scenario in which a plan and its administrator, as opposed to a claimant challenging the denial of benefits, are seeking discovery beyond the administrative record.  Unsurprisingly, courts in this Circuit usually discuss the standard for seeking such discovery in terms pertaining to the ability of the *claimant*, rather than the ability of a plan or its administrator, to conduct discovery.  *See, e.g.*, *Pretty*, 696 F. Supp. 2d at 182 (discussing the showing a *plaintiff* must make to expand discovery beyond the administrative record in an ERISA suit alleging an improper denial of benefits); *Sobhani v. Butler Am., Inc.*, No. 3:13-CV-0728 (MPS) (WIG), 2014 WL 545730, at *2 (D. Conn. Feb. 10, 2014) (same); *Burgio*, 253 F.R.D. at 229–30 (same).  Indeed, Defendants have directed the Court to no case in which a plan or its administrator has been granted additional discovery based on an argument that the administrative record was incomplete.  In their motion, Defendants cite only to cases in which ERISA claimants sought discovery beyond the administrative record, *Pretty*, 696 F. Supp. 2d at 182; *Benjamin*, 2017 WL 772328, at *2, or in which the Second Circuit was describing the general good cause standard for admitting additional evidence, *Halo*, 819 F.3d at 60.

Moreover, courts commonly discuss the "good cause" standard for admitting evidence beyond the administrative record in terms suggesting that the standard is primarily applicable where the claimant, rather than a plan or its administrator, seeks to supplement the record.  For

example, as noted above, courts have found good cause where evidence outside the administrative record demonstrates procedural unfairness, such as that the plan administrator has a conflict of interest. *See DeFelice*, 112 F.3d at 66. If a plan or its administrator were to seek discovery on this basis, they would essentially need to concede that they may have conducted a procedurally unfair administrative process. Thus, in many ways, the standard for seeking additional discovery in this Circuit is not easily applied where the plan or its administrator is the party seeking such discovery, rather than the claimant. *Cf. Zervos*, 277 F.3d at 646 ("We . . . have implied that the district court should not accept information from the insurer that was not part of the original record unless the insured is instrumental in causing the information to be added to the record."). In any event, even assuming the standard for permitting additional discovery is the same regardless of which party has requested it, Defendants have failed to demonstrate a reasonable chance that the discovery they seek will satisfy the good cause requirement.[4]

Importantly, courts in this Circuit have declined to allow parties to conduct additional discovery or supplement the record with additional evidence where the party had ample opportunity to develop the record prior to a claim determination. *See Muller*, 341 F.3d at 125 (finding no good cause to admit additional evidence where claimant was given "ample time to submit additional materials"); *Dabush v. Guardian Life Ins. Co. of Am.*, No. 3:10-CV-00067 (AWT), 2011 WL 3563137, at *10 (D. Conn. Aug. 15, 2011) (similar) (quoting *Muller*), *aff'd*, 486 F. App'x 962 (2d Cir. 2012) (summary order); *Suozzo v. Bergreen*, No. 00 CIV. 9649 (JGK), 2003 WL 22387083, at *6 (S.D.N.Y. Oct. 20, 2003) (declining to expand administrative record where claimant "had ample opportunity to develop the record during the appeals process"). Here, SFCU

---

[4] Because the Court finds that Defendants have failed to show a reasonable chance that the good cause requirement will be met, it need not decide whether Defendants must meet the higher bar of making a "full good cause showing" regarding the discovery they seek.

and the Plan had ample opportunity to develop the record during the underlying administrative process.

In opposing Defendants' motion, Purcell has submitted documentation that, on multiple occasions, he requested that SFCU and the Plan adequately respond to his notice of claim by, among other things, providing him with a denial letter stating the reasons for his termination, along with supporting documentation.[5]  ECF Nos. 26-1 at 6–7 (March 12, 2022, letter), 10–12 (March 22, 2022, letter); *see id.* at 17–18 (April 4, 2022, letter regarding the Plan's "failure to issue a notice of decision that complies with Section 10.1.3 [of the Plan] and the applicable regulations"). For example, in a letter dated March 22, 2022, Purcell's counsel specifically discussed the Parkinson's Disease symptoms Purcell claimed he experienced while employed at SFCU and stated Purcell's belief that his impairments "were obvious and would have been easily noticed by management and directors."  *Id.* at 11.  The letter further stated:

> Considering the unspecific reason Scient gave to Mr. Purcell for his termination, that Scient "has decided to go in another direction," and Mr. Purcell's superior performance in his position, we believe we will be able to establish that Mr. Purcell's disability was the reason for his termination.

> Please send us a denial letter that satisfies the Plan's obligations under the Plan and the Claim Regulations, explaining the reasons for denial, including citation to the specific agreement provisions on which the denial is based, a description of any additional information necessary to perfect the claim and an explanation of why it is needed, and stating the reason for Mr. Purcell's termination and documents regarding the same so we may respond to the denial as part of a meaningful appeal process.

*Id.* at 12.

Based on these communications, SFCU and the Plan were given ample opportunity to develop the record during the underlying claim process.  Defendants do not dispute Purcell's assertion that they did not respond to him with documentation regarding the reason for his

---

[5] In their answer, Defendants admit that Purcell wrote to SFCU with such a demand on March 22, 2022.  Ans. ¶ 41.

termination; nor do they contend that they ever requested additional information from Purcell regarding his claim.  Instead, they assert that Purcell's complaint now "brings into focus" two particular disputed issues:  his "superior" job performance and how Parkinson's Disease impacted him—matters that, according to Defendants, are not addressed in the administrative record.  But, according to the communications the parties exchanged after the submission of Purcell's notice of claim, Defendants had the ability during the claim administration process to add documentation regarding the reason for Purcell's termination to the record and to seek additional information from Purcell regarding his performance and his symptoms.  Indeed, Purcell raised in his letters to Defendants during the claim process the *precise* matters Defendants argue his complaint now "brings into focus."

Notably, in *Schrom v. Guardian Life Insurance Co. of America*, No. 11 CIV. 1680 BSJ JCF, 2012 WL 28138, at *5 (S.D.N.Y. Jan. 5, 2012), the district court denied a plan administrator's request to depose a plaintiff under similar circumstances.  There, the plan administrator sought to depose the plaintiff in order to "test [her] credibility" in relation to representations she made in an application for disability benefits.  *Id.*  The court found that, under the circumstances, testing the plaintiff's credibility was an insufficient reason to warrant deposing her.  *Id.*  In doing so, the court reasoned that the plaintiff's application for disability benefits "could have been available to the administrator had it been requested."  *Id.*; *see also id.* ("Were [the plaintiff] seeking to introduce evidence concerning her disability beyond that contained in the administrative record, there might well be good cause for taking her deposition. . . . However, she has disavowed any such intention . . . ."). As a result, the court concluded that the administrator could not "base its demand for discovery now on its failure to obtain information as part of its claim investigation process."  *Id.*

Similarly, here, Defendants seek to depose Purcell, and to obtain documents outside the administrative record, despite that they had the ability to develop the record with such discovery during the underlying claim process. Like the administrator in *Schrom*, Defendants could have requested additional information from Purcell concerning his assertion of superior performance and the impact of his disease during the claim process, yet apparently chose not to do so. And, like the plaintiff in *Schrom*, Purcell has not sought to introduce evidence outside of the administrative record. *See* ECF No. 26 (seeking the opportunity to conduct additional discovery *if* the Court grants Defendants' present motion). Thus, Defendants cannot base their demand for discovery now on their failure to obtain information as part of the claim investigation process, *see Schrom*, 2012 WL 28138, at *5.[6]

For these reasons, Defendants' request to conduct discovery outside the administrative record is DENIED.

---

[6] The Court is unpersuaded by Defendants' argument that additional discovery is required because the Social Security Administration's determination regarding Purcell's disability is not dispositive of whether he was capable of performing his job. Even so, the point remains that Defendants had the opportunity to develop the administrative record during the underlying claim process. Defendants' present attempt to dispute the significance of the Social Security Administration's determination does not change that Defendants apparently failed to take that opportunity.

IV.     **CONCLUSION**

For the reasons described herein, Purcell's motion to dismiss counterclaims is GRANTED, and Defendants' motion to expand discovery is DENIED.  By **May 11, 2023**, the parties shall jointly file a proposed schedule for the submission of dispositive motions and any other remaining activity in this case.

**SO ORDERED** at Hartford, Connecticut, this 4th day of May, 2023.

    */s/ Sarala V. Nagala*
    SARALA V. NAGALA
    UNITED STATES DISTRICT JUDGE